[L.A. No. 31912. Mar. 21, 1985.]

BRUCE POLLACK, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Beth Lori Faber, Deputy Attorney General, for Defendant and Appellant.

William A. O'Malley, District Attorney (Contra Costa), and Gayle Elaine Graham, Deputy District Attorney, as Amici Curiae on behalf of Defendant and Appellant.

Michael R. Marrinan for Plaintiff and Respondent.

Lowell Sykes, Alaine Parry, Rasiel Gessler and David W. Brown as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**GRODIN, J.**—Once again we are called upon to interpret the ambiguous wording of a recently amended statute. In this case, the issue involves the

meaning of certain language in Vehicle Code section 13352,[1] as amended in 1981.

■ The Department of Motor Vehicles (DMV) appeals from a judgment setting aside its one-year suspension of Bruce Pollack's driving privileges pursuant to section 13352, subdivision (a)(3), following Pollack's second drunk driving conviction within five years. The sole issue is whether the DMV may suspend a license of a twice convicted drunk driving offender under section 13352, subdivision (a)(3), where the prior conviction is neither alleged nor proven in the second criminal proceeding. For the reasons which follow, we conclude it can and reverse the judgment.

Pollack was convicted of drunk driving on December 4, 1981, and again on September 9, 1982. The criminal complaint filed in the second offense did not allege the prior conviction nor was the fact of that conviction proven at trial. On November 23, 1982, the DMV suspended Pollack's license for a period of one year pursuant to section 13352, subdivision (a)(3), which requires the DMV to suspend the license of drivers convicted of any "violation of section 23152 punishable under section 23165."[2]

Pollack does not contest the accuracy of the DMV's records or the legality of either of his convictions. He thus admits that he incurred two valid convictions for drunk driving within the applicable five-year period. Nonetheless, he argues that the DMV may not suspend his license under section 13352 because, in its 1981 amendments to that statute, the Legislature evidenced an intention to impose the "plead and prove" requirement pertinent

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

[2]Section 13352, subdivision (a)(3) provides: "(a) The department shall immediately suspend or revoke the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109, or upon receipt of a report of a judge of the juvenile court, a juvenile traffic hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153 or subdivision (a) of Section 23109. For the purposes of this section, suspension or revocation shall be as follows: . . . [¶] (3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23165, the privilege shall be suspended for one year. The privilege shall not be reinstated until the person gives proof of ability to respond in damages as defined in Section 16430."

Section 23165 provides: "If any person is convicted of a violation of Section 23152 and the offense occurred within five years of a prior offense which resulted in conviction of a violation of Section 23152 or 23153, or a prior offense which occurred on or after January 1, 1982, which resulted in a conviction of a violation of Section 23103 as specified in Section 23103.5, that person shall be punished by imprisonment in the county jail for not less than 90 days nor more than one year and by a fine of not less than three hundred seventy-five dollars ($375) nor more than one thousand dollars ($1,000). The person's privilege to operate a motor vehicle shall be suspended by the Department of Motor Vehicles pursuant to paragraph (3) of subdivision (a) of Section 13352."

to criminal proceedings upon the administrative processes of the DMV. Accepting this theory, the trial court directed the DMV to vacate its order suspending Pollack's driving privileges because of the failure to plead and prove his prior conviction at his second trial. On appeal, the DMV contends that it is statutorily required to suspend a license after a second conviction whether or not the prior conviction was proven during the second trial.

 Section 23152 is the basic Vehicle Code provision prohibiting any person under the influence of alcohol or drugs from driving a motor vehicle.[3] Section 23152 and section 23165, the sentencing provision pertinent to a second offense, are contained in division 11 (Rules of the Road), chapter 12 (Public Offenses), which details the criminal penalties attendant upon violations of the driving laws. Section 13352, by contrast, is contained in division 6 which pertains to the DMV's issuance, renewal, suspension and revocation of drivers' licenses. Thus, in its present format, section 13352 instructs the DMV to regulate drivers' licenses by reference to specific provisions of the criminal statutes.

 The fundamental principle of statutory interpretation is "the ascertainment of legislative intent so that the purpose of the law may be effectuated. . . ." (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) This principle requires us to determine the objective of the Legislature and to interpret the law so as to give effect to that objective even when such an interpretation appears to be at odds with conventional usage or the literal construction of the statutory language. (*Younger, supra,* at pp. 40-42; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

 In this instance, the disputed phrase, "violation of Section 23152 punishable under Section 23165," is ambiguous. It is a well-established principle in our law that, when a prior conviction is relied upon as a

---

[3]Section 23152 currently provides: "(a) It is unlawful for any person who is under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle.

"(b) It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

"For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood.

"In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.10 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.10 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving.

"(c) It is unlawful for any person who is addicted to the use of any drug to drive a vehicle. This subdivision shall not apply to a person who is participating in a methadone maintenance treatment program approved pursuant to Article 3 (commencing with Section 4350) of Chapter 1 of Part 1 of Division 4 of the Welfare and Institutions Code."

means of empowering a court to impose increased criminal penalties, the indictment or complaint must allege the prior conviction and, unless admitted, it must be proven. (*Cavassa* v. *Off* (1929) 206 Cal. 307, 313 [274 P. 523].) ■■ Thus, in light of the prosecutor's failure to allege and prove Pollack's prior conviction, he could not be subjected to sentencing under section 23165. For this reason, Pollack contends that he was not "punishable under Section 23165." Therefore, he argues, the literal terms of section 13352, subdivision (a)(3), do not apply to him.

The DMV argues, however, that section 13352 does not refer to the *offender* as being punishable under section 23165, but to the *offense*. Several California courts have construed the word "punishable" when used with reference to an offense to mean "may be punished" or "liable to be punished." (*People* v. *Superior Court* (1931) 116 Cal.App. 412, 415 [2 P.2d 843]; *People* v. *McCullin* (1971) 19 Cal.App.3d 795, 799 [97 Cal.Rptr. 107].) In *McCullin,* the court interpreted the phrase "offense punishable by death" in former Penal Code section 1202b to mean "all offenses for which the statute authorizes the death penalty as a possible maximum punishment *regardless of whether it is imposed in a particular case.*" (*McCullin, supra,* at pp. 798-799, italics added.)[4] Thus, the DMV contends that section 13352 refers to offenses *potentially punishable* under section 23165 (i.e., second offenses of driving under the influence within five years of a prior offense) regardless of the punishment actually imposed.

Both interpretations are plausible. In a case where the statute's words are sufficiently flexible to admit of several constructions, it is appropriate to examine the legislative history in an attempt to discern the purpose of the statute. (See *Friends of Mammoth, supra,* 8 Cal.3d at pp. 259-262.)

Prior to the 1981 amendments, the Vehicle Code contained no separate sentencing statutes analogous to present sections 23160, 23165, 23170 and 23175. Rather, criminal sentences were set out in the statutes defining driving offenses. Former section 13352, therefore, made no reference to sentencing statutes, but instead provided that the DMV should suspend or revoke a driver's license upon receipt of an abstract of a record of any court showing a conviction for driving under the influence. Varying durations of suspension or revocation were specified for first, second, and subsequent convictions. The provisions of former section 13352 thus specified:

---

[4]In *McCullin,* a defendant under 23 years of age was convicted of first degree murder. During voir dire the prosecution stipulated that it would not seek the death penalty. The issue of interpreting Penal Code section 1202b then became whether the defendant had or had not been convicted of an offense punishable by death. The court concluded that he had, thus, relying, in part, upon the history of the statute as an indication that this interpretation was consonant with the Legislature's intent.

"(a) Upon a first . . . conviction," driving privileges would be suspended for six months if the court so ordered;

"(c) Upon a second . . . conviction," driving privileges would be suspended for not less than a year;

"(e) Upon a third or subsequent conviction," driving privileges would be revoked, not to be reinstated for a period of three years.

It was established under former section 13352 that the DMV was required to suspend a driver's privileges upon a second conviction regardless of whether the prior conviction had been alleged and proven at the second trial. (*Cook* v. *Bright* (1962) 208 Cal.App.2d 98 [25 Cal.Rptr. 116].) Thus, under the operation of former section 13352, a driver in Pollack's situation would clearly have suffered a suspension of driving privileges quite apart from whether the prosecutor chose to plead and prove the prior conviction. Pollack contends that by amending section 13352 in 1981, the Legislature evinced an intention to afford greater procedural protections to those convicted of driving under the influence than had prevailed under prior law. We cannot agree with this conclusion.

In 1981, the Legislature effected a comprehensive reorganization of the Vehicle Code. These 1981 amendments amended and reenacted most of the code provisions relating to driving under the influence of intoxicating liquor and drugs. This legislation was evidently prompted by increasing public concern over the problem of intoxicated drivers. (See generally *Review of Selected 1981 California Legislation* (1982) 13 Pacific L.J. 787-799.) In general terms, the amended statutes made it more difficult to avoid a criminal conviction for the offense of driving under the influence and increased the criminal penalties to be imposed upon conviction. (Compare former § 23102, subd. (d).) The ability of the courts to avoid imposition of mandatory jail sentences and fines was restricted. (See §§ 23166, 23171, 23200, 23206.) In addition, more stringent mandatory probation provisions were imposed. (See §§ 23166, 23171, 23206.) Throughout these amendments, the Legislature's attempt to banish intoxicated drivers from our highways is obvious. It is difficult to reconcile this clear objective with the increased legislative solicitude for the driving privileges of twice-convicted drunk drivers which Pollack purports to discern in the 1981 amendment to section 13352.

Rather, another and more credible explanation illuminates the Legislature's intent in choosing this ambiguous wording. As originally introduced by Assemblywoman Moorhead on February 18, 1981, Assembly Bill No. 541 included new sections 23156 through 23160. These new sections mandated sentences for first and subsequent offenses of both section 23152 and

section 23153 (driving under the influence and causing bodily injury). One feature of these sentencing provisions, as originally drafted, was that first offenses of the more serious violation (§ 23153) were grouped together with subsequent offenses of the less serious violation (§ 23152) in a single sentencing provision, with the same punishment provided for both. For example, section 23157 imposed imprisonment of 90 days to a year and a fine of $375 to $1,000 as the punishment for both a *first offense* of section 23153 and a *second offense* of section 23152. Section 23158 similarly grouped *second offenses* of section 23153 with *third and subsequent offenses* of section 23152.

On the same day she introduced Assembly Bill No. 541, Assemblywoman Moorhead also introduced Assembly Bill No. 542. This bill, intended to take effect only if Assembly Bill No. 541 were enacted, amended additional provisions of the Vehicle Code to conform to the provisions of Assembly Bill No. 541. Assembly Bill No. 542 contained proposed revisions of section 13352, and appears to be the origin of the "punishable under" language which we consider in this case.

In light of Assembly Bill No. 541's sentencing provisions, described above, the necessity of specifying the substantive provision violated (§ 23152 or § 23153) and the number of the offense (first, second, or third and subsequent) in section 13352 was obviated. The sentencing provisions themselves conveyed this information in an abbreviated formulation.

Section 21 of Assembly Bill No. 542, for example, proposed that section 13352 be amended to read, "[u]pon a conviction or finding of a violation punishable under section 23156," where the former statute had provided, "[u]pon a first such conviction or finding." Similarly, "[u]pon a conviction or finding of a violation punishable under Section 23158 or 23159," replaced "[u]pon a second such conviction or finding" in the former statute.

This observation suggests that the "punishable under" formulation was merely intended to provide a shorthand reference to drunk driving offenses, with and without prior convictions. It does not imply, as Pollack suggests, an intent on the part of the Legislature to change the operation of existing law pertinent to the DMV's suspension or revocation of drivers' licenses upon a second conviction for drunk driving.

This conclusion is bolstered by consideration of the Legislative Counsel's Digests prepared for Assembly Bills Nos. 541 and 542 as they progressed through both houses of the Legislature.[5] Assembly Bill No. 541 was amend-

---

[5]Although originally introduced in Assembly Bill No. 542, the amended version of section 13352 was added to Assembly Bill No. 541 as part of the Assembly amendments to the latter on March 23, 1981.

ed six times prior to passage. With each amendment, a new Legislative Counsel's Digest was prepared. Insofar as these digests are relevant to our interpretation of section 13352, subdivision (a)(3), they consistently indicate the Legislature's intent to require the DMV to suspend a driver's license upon a second conviction of driving under the influence. The digests suggest no intent to change the mechanics of the prior law.

Thus, the digest prepared for Assembly amendments of March 23, 1981, read, in pertinent part:

"Existing law . . . provides for the suspension or revocation of a person's privilege to operate a motor vehicle for, among other things, driving while under the influence of intoxicating liquor or drugs or the combined influence thereof. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"The bill would require the Department of Motor Vehicles to suspend the privilege for 90 days to 6 months for a first conviction of that violation not involving bodily injury or death. *The bill would require the department to suspend the privilege for 1 year for a second conviction of that violation not involving bodily injury or death to another* or for a first conviction of that violation involving bodily injury or death to another." (Italics added.)

The final version of the Legislative Counsel's Digest, introducing the statute as enacted, read, in pertinent part:

"Existing law . . . provides for the suspension or revocation of a person's privilege to operate a motor vehicle for, among other things, driving while under the influence of intoxicating liquor or drugs or the combined influence thereof. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"The bill would require the department to suspend that privilege for 1 year for a second conviction of that violation and to revoke it for 3 years for a third or subsequent conviction." (Leg. Counsel's Dig. of Assem. Bill No. 541 (1981 Reg. Sess.).)

If the statute actually read as described by the Legislative Counsel, there would be no question as to its meaning. As this court has had occasion to observe before, it is reasonable to presume that the Legislature acts, in amending statutes, with the intent and meaning expressed in the Legislative

Counsel's Digest. (See *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139].)

We also note that the Legislature specifically provided that out-of-state convictions would result in suspension of driving privileges under section 13352, subdivision (d). In our view, this is yet another indication that the Legislature did not intend to impose a "plead and prove" prerequisite to license suspension. The California Legislature is obviously powerless to impose a "plead and prove" requirement upon the courts of other states. Nor does the statutory scheme contemplate any mechanism by which the DMV could ascertain whether prior convictions had been alleged and proven in out-of-state proceedings. Yet prior law established that two priors each in a different state would result in license suspension under former section 13352 (*Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265 [109 Cal.Rptr. 104]), and subdivision (d) of section 13352 appears to be designed to codify the *Cook* court's holding.

It seems unlikely that our Legislature would provide special procedural protections to safeguard the driving privileges of California drivers tried in California courts, while simultaneously failing to provide similar protections for California drivers tried in out-of-state courts.

For these reasons, we conclude that the Legislature did not intend, via its 1981 amendment, to alter the operation of prior law, and that the DMV, under section 13352, subdivision (a)(3), is mandated to suspend the driving privileges of a driver convicted of a second drunk driving offense within five years.[6]

It has been argued that this interpretation of section 13352 renders certain language in section 23200 meaningless. We do not agree.

Section 23200 was enacted contemporaneously with the comprehensive 1981 reorganization of the Vehicle Code discussed above. As originally enacted, subdivision (a) of section 23200 provided: "In any case charging a violation of Section 23152 or 23153 and the offense occurred within five years of one or more prior offenses which resulted in convictions of violations of Section 23152 or 23153, or one or more prior offenses which occurred on or after January 1, 1982, which resulted in convictions of violation of section 23103 as specified in Section 23103.5, or any combination, or all, of those three provisions, the court shall not strike any prior conviction of those offenses for purposes of sentencing in order to avoid imposing,

---

[6]Because the DMV's action was mandatory, Pollack was not statutorily entitled to an administrative hearing prior to the suspension of his driving privileges. (§ 14101.)

as part of the sentence or term of probation, the minimum time of imprisonment and the minimum fine, as provided in this chapter." (Stats. 1981, ch. 941, § 10, p. 3592.)

It is apparent that this statute was intended to limit the power of the court, by striking prior convictions, to avoid imposing the new harsher sentences mandated for multiple offenses of drunk driving. Early in 1982, the Legislature enacted additional amendments to the Vehicle Code. Many of these were intended to clarify provisions of the 1981 law or to eliminate minor inconsistencies in the 1981 enactments. These 1982 amendments were enacted as an urgency measure. (Stats. 1982, ch. 53, eff. Feb. 18, 1982.)

Among many other provisions, chapter 53 added the following clause to the end of subdivision (a) of section 23200: "or for purposes of avoiding revocation, suspension, or restriction of the privilege to operate a motor vehicle, as provided in this code." (Stats. 1982, ch. 53, § 40, p. 178.)

On the basis of this change in the legislation, the following argument is advanced. Former section 13352 clearly required the DMV to suspend a license upon receiving notice of a second or subsequent conviction whether or not the prior conviction(s) had been pleaded and proven at the subsequent trial. Therefore, under the operation of prior law, the court's decision to strike prior convictions would have no effect upon the DMV's authority to suspend or revoke driving privileges. So, if the DMV's interpretation of the 1981 amendment to section 13352 is correct, and no change in the mechanics of the prior law was effected, then the language of the 1982 amendment *to section 23200 was wholly unnecessary.* By negative implication, therefore, the 1982 amendment of section 23200 must indicate that the Legislature understood that in 1981 it *had* effected a change in the operation of section 13352. The Legislature must have intended that prior convictions be pleaded and proven in court before the DMV could suspend or revoke driving privileges under section 13352. According to this view, only once such prior convictions had been proven would section 23200 deprive the courts of their authority to strike priors to avoid license suspension or revocation.

While logically consistent, this argument is based on a false premise. The amended language of section 23200 does not refer to an imaginary change in the operation of section 13352, but to a real change in the operation of section 13352.5.

Prior to the 1981 amendments, section 13352.5 provided that the court could prevent the DMV's suspension or revocation of driving privileges by certifying that the driver was participating in an alcoholism treatment pro-

gram. This provision, by its terms, applied not only to first and second offenders, but to all offenders regardless of the number of prior drunk driving convictions they had incurred. (See former § 13352.5, Stats. 1978, ch. 954, § 2, p. 2954.)

In the comprehensive 1981 amendments, the Legislature effected a significant change in this statute. Although the court could still prevent the suspension or revocation of driving privileges of *second* offenders, the provisions pertinent to third and subsequent offenders were deleted. (See former § 13352.5, Stats. 1981, ch. 940, § 6, p. 3564.)[7] After 1981, revocation of driving privileges upon a third conviction of drunk driving within five years became mandatory in all cases.

Thus, the 1981 amendment of section 13352.5 clearly expressed the Legislature's intent to deprive all third and subsequent offenders of their driving privileges. Nonetheless, under section 13352.5, the courts still retained the power to preserve the driving privileges of second offenders. The Legislature evidently feared that, under certain circumstances, the courts might strike one or more prior offenses, sentence third or fourth offenders as *second* offenders, and thus attempt to preserve these offenders' driving privileges by certifying that they had consented to participate in an alcoholism treatment program under the terms of section 13352.5.

The 1982 amendment to section 23200 was apparently designed to prevent any such judicial circumvention of the Legislature's plan to remove all third offenders from the highways. To hold that this language, obviously inserted as further evidence of the Legislature's intention to rid California highways of the menace of drunk drivers, somehow requires us to allow this twice convicted drunk driver to retain his driving privileges would indeed be an anomalous result.

The dissent errs in suggesting that our interpretation of amended section 13352 gives rise to a "very grave due process problem." (See, *post,* at p. 382.) Any driver in Pollack's position will already have had at least two opportunities to be heard in the criminal trials precedent to each of his

---

[7] Although the February 1982 amendment made minor changes in the wording of section 13352.5, this essential element of the statute remained unchanged. (See former § 13352.5, Stats. 1982, ch. 53, § 17, p. 167.)

convictions for drunk driving. In addition, under our reading of section 14101, any such driver is entitled to a prompt hearing before a representative of the DMV if he believes his suspension is based upon inaccurate DMV records.[8] Finally, a driver who contests the validity of prior convictions is entitled to bring a challenge against these convictions within the rendering court system. (See *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858]; *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d 265; *Fitch* v. *Justice Court* (1972) 24 Cal.App.3d 492 [101 Cal.Rptr. 227].) We reiterate that Pollack himself challenges neither the accuracy of the DMV's records nor the validity of his two prior convictions.

■ The United States Supreme Court has held that due process does not require an administrative hearing prior to revocation of driving privileges where the threat to public safety is sufficiently obvious to justify immediate termination. (*Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723].) The California courts have long held the same view. (See *Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 285 [5 Cal.Rptr. 668, 353 P.2d 276]; *Cook* v. *Bright, supra,* 208 Cal.App.2d 98, 103; *Westmoreland* v. *Chapman* (1968) 268 Cal.App.2d 1, 5 [74 Cal.Rptr. 363]; *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d at p. 268.) ■ We are satisfied that the procedural safeguards afforded to California drivers which are summarized above are adequate to satisfy the demands of the Fourteenth Amendment due process clause as well as the demands of article I, sections 7 and 15 of the California Constitution.

*Conclusion*

The thrust of the legislative concern under Vehicle Code section 13352 remains as it was under prior law: protection of the public from drivers

---

[8]Article 3 of the Vehicle Code discusses procedures for providing hearings to persons whose driving privileges are to be suspended or revoked. Section 14100 provides for hearings in specified situations. That section does not provide that these situations are exclusive, however, and indeed the code provides for an article 3 hearing in at least one situation not specified in section 14100. (See § 13353.) Section 14101, subdivision (a) provides that a person is *not* entitled to a hearing "[w]henever the action of the department is made mandatory by the provisions of this code." The duty of the DMV to suspend drivers' licenses under section 13352 is mandatory and, under section 14101, if such a person comes within the terms of the statute he is not entitled to a hearing. (*Houlihan* v. *Department of Motor Vehicles* (1970) 3 Cal.App.3d 915, 919 [83 Cal.Rptr. 885].) Section 13352, however, mandates suspension or revocation only upon receipt of a duly certified abstract of a court record reflecting a drunk driving conviction, and in the case of multiple offenses, only where DMV records reflect prior convictions. If the DMV's records are inaccurate or if there is a mistake as to identity, license suspension is not mandatory by the provisions of the code. Under the terms of section 14101, therefore, a driver who contests the accuracy of DMV records of prior convictions may not be denied the opportunity for an administrative hearing to demonstrate that suspension is not mandatory in his case.

whose prior conduct demonstrates they cannot currently be trusted with a license to drive. That concern would not be served by an interpretation of the statute which makes public protection dependent upon whether a prosecutor, in a criminal proceeding, chooses to plead and prove the prior offense. ■ ■ ■ ■ Rather, as the statutory history demonstrates, the Legislature intended license revocation to follow administratively from the record of convictions.[9] Of course, a driver who wishes to challenge the existence or validity of a prior conviction must be afforded an opportunity to do so. That, however, is not the situation here.

The judgment is reversed.

Kaus, J., Broussard, J., and Lucas, J., concurred.

**MOSK, J.**—I dissent.

As is so often the case, when a grave social problem emerges that seems to require severe sanctions, the legislative source—sometimes the people by initiative, sometimes the Legislature—acts with undue haste and the result is a statute that is hardly a model of clarity. That occurred here. The public outcry against repetitive drunk drivers resulted in the adoption of a measure that unfortunately may not always achieve its apparently desired objective.

The majority opinion is difficult to track. It contends that the legislation is ambiguous. It then proceeds to ignore the generally accepted result of statutory ambiguity—i.e., to resolve the ambiguity in favor of a criminal defendant, as the trial court did. Finally, the majority rationalize a result that ignores the text of the statute and plays havoc with a defendant's elementary due process right to be heard. In my opinion the laudable motive of getting drunk drivers off the streets and highways does not justify suspending the rule of law in California.

The Vehicle Code (§ 13352, subd. (a)(3)) provides that the department shall suspend or revoke a license "upon a conviction or finding of a viola-

---

[9]We recognize the importance of the driving privilege in our society and the possibility of error in the revocation or suspension process. Therefore, to further both the goal of removing drunk drivers from the road, and of ensuring the accuracy of the DMV's records, the sentencing court should inform the defendant that his license will be suspended if the records reflect a prior conviction, that if he does have a prior conviction he may no longer drive, and of the procedures by which to challenge such suspension or revocation.

tion of Section 23152 punishable under Section 23165 . . . ." A person need not be punished under section 23165, but he must be punishable under that section. One is punishable under section 23165 only if his prior offense was pleaded and proved.

The reason for the foregoing is clear. Section 23165 provides not only for license suspension, but for increased punishment up to a year in jail and a fine of $1,000 when there has been a prior offense committed within five years. We have consistently required that whenever prior convictions may be employed to increase penalties, they must be pleaded and proved, with the defendant given an opportunity to be heard in opposition. See, for example, the unanimous opinion of this court in *People* v. *Jenkins* (1975) 13 Cal.3d 749, 756 [119 Cal.Rptr. 705, 532 P.2d 857]; to the same effect are *People* v. *Lo Cicero* (1969) 71 Cal.2d 1186, 1192 [80 Cal.Rptr. 913, 459 P.2d 241], and *People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892].

The People failed to plead and prove defendant's prior conviction. Therefore he was not punishable under section 23165, and the prerequisite for suspension under section 13352, subdivision (a)(3), was not met. The trial court's order was thus compelled.

Since the majority are in error in their statutory interpretation, I need not reach the very grave due process problem that lurks in the background. I do observe, however, that under the traditional American rule of law, one may not be deprived of a right without an opportunity to be heard. On the issue of his prior conviction, this defendant has had no opportunity, in court or before an administrative agency, to be heard and to produce evidence concerning any possible invalidity of the prior. Indeed, he was not even informed, through any pleading, that he was in additional jeopardy because of the purported prior conviction. That does not comport with any recognized concept of due process. As Justice Cardozo wrote in *Escoe* v. *Zerbst* (1935) 295 U.S. 490, 493 [79 L.Ed. 1566, 1569, 55 S.Ct. 818], "He shall have a chance to say his say before the word of his pursuers is received to his undoing."

There is no justification for the prosecution to fail to charge a prior drunk driving conviction. Unfortunately, after the majority opinion in this case is filed there will be no incentive for the prosecution to do so. Yet there would be no burden on the state: it has local records available, and for records elsewhere the facilities of state and federal Department of Justice bureaus are as handy as the nearest law enforcement computer terminal. Ineptness of the prosecution in this instance does not justify judicial rewriting of a statute. The next legislative session should do that.

I would affirm the judgment.

Bird, C. J., and Reynoso, J., concurred.