[No. S040219. Dec. 26, 1995.]

CHARLES HALE LARSEN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Michael R. McDonnell, David Joseph Macher and Jeffrey D. Kent for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Assistant Attorney General, Martin H. Milas and Thomas Scheerer, Deputy Attorneys General, for Defendant and Respondent.

---

OPINION

**GEORGE, J.**—Vehicle Code section 13352, subdivision (a)(1), imposes a duty upon the Department of Motor Vehicles (DMV) to suspend the license of any driver, in the case of a first offense, for a period of six months "upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted" of the criminal offense of driving under the influence of an alcoholic beverage or any drug. (Veh. Code, § 23152 et seq.)[1] Section 13352 makes no distinction between convictions arising in California and equivalent convictions arising out of state.[2]

In *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858], this court concluded that when the DMV suspends a California driver's license upon the driver's conviction of driving under the influence of alcohol, and the driver seeks to challenge the license suspension upon the ground that the conviction is constitutionally infirm, the driver may not raise such a claim in the first instance by seeking a writ of mandate against the DMV, but first must successfully challenge the validity of the conviction in the court in which it was rendered, or in a mandate proceeding directed at the rendering court, or in a criminal proceeding in

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] Section 13352, subdivision (a), provides in pertinent part: "The department shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 . . . . For purposes of this section, suspension or revocation shall be as follows: [¶] (1) Upon a conviction or finding of a violation of Section 23152 punishable under Section 23160 [first offense], the privilege shall be suspended for a period of six months if the court orders the department to suspend the privilege, or if the court does not grant probation. . . ."

Subdivision (d) of that section provides that "[a] conviction of an offense in any state, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or Canada which, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for purposes of this section . . . ." (§ 13352, subd. (d).)

which the conviction was alleged as a prior offense. Although the court in *Thomas* recognized that, in a criminal proceeding, a prior conviction generally may be attacked at any time upon limited constitutional grounds whenever the prior conviction provides the basis for imposing increased punishment upon the defendant, we held that a similar rule does not apply in a mandate proceeding brought against an administrative agency, which is not authorized to determine the validity of a prior conviction, when that agency is under a statutory duty to suspend a license upon the basis of the conviction. The question presented by the case before us is whether our holding in the *Thomas* case should be applied to a mandate petition filed by plaintiff against the DMV, in which plaintiff sought to challenge the constitutionality of his prior *out-of-state* conviction for driving under the influence of alcohol without having had an opportunity to challenge that prior conviction in a subsequent California criminal proceeding.

In the *Thomas* case itself, the challenged prior conviction was a California conviction, and therefore the plaintiff in that case had a means of challenging the validity of the conviction in a California tribunal. In the present case, by contrast, the challenged conviction is an out-of-state conviction that has not been alleged as a prior conviction in any California criminal proceeding. Plaintiff contends that, because the application of the *Thomas* ruling in this context would permit California to suspend his driver's license without affording him a proceeding in any California forum in which to challenge his prior conviction, the *Thomas* holding should not, and constitutionally may not, be applied in the present circumstances.

The superior court disagreed with plaintiff's contention and denied his mandate petition, relying upon the decision in *Cook* v. *Department of Motor Vehicles* (1973) 33 Cal.App.3d 265 [109 Cal.Rptr. 104]. When plaintiff appealed, the Court of Appeal, relying upon the contrary decision in *Axness* v. *Superior Court* (1988) 206 Cal.App.3d 1489 [255 Cal.Rptr. 896], reversed the judgment of the superior court and concluded that when California suspends a driver's license upon the basis of an out-of-state conviction, it must afford the driver an opportunity to challenge the constitutional validity of the conviction in a California forum. We granted review to determine the proper application of our holding in *Thomas* in this setting.

As we shall explain, we conclude that the *Thomas* decision constitutionally may be—and should be—applied in the present context. Consequently, the judgment rendered by the Court of Appeal must be reversed.

I

On May 8, 1992, Charles Larsen, a resident of Orange County, was arrested in Clifton Park, New York, for driving while intoxicated, and for

failing to remain on the right of the median line of the road. Thereafter, Larsen's defense counsel submitted to the Clifton Park Justice Court a guilty plea form that had not been executed by Larsen. Due to that circumstance, the court requested confirmation that counsel fully had explained to Larsen his rights and had been authorized by Larsen to enter a guilty plea on his behalf. On June 2, 1992, defense counsel submitted his own affidavit, stating he fully had explained the charges to Larsen, and fully had advised him of the "ramifications" of a guilty plea to lesser charges of driving while "ability impaired," and of failing to obey a traffic device.

On July 7, 1992, Larsen was convicted of driving while ability impaired (N.Y. Veh. & Traf. Law § 1192, subd. (1) (McKinney 1995)), and of failing to obey a traffic device (N.Y. Veh. & Traf. Law § 1110, subd. (a) (McKinney 1995)).[3] The New York court ordered Larsen to pay fines totaling $350 and to undergo evaluation by an accredited alcoholism treatment center. On August 18, 1992, after receiving notice of the New York conviction,[4] the California DMV, acting "under the authority of sections 13352A1 and of the Vehicle Code," issued an order suspending Larsen's driving privilege for a period of six months, commencing on July 7, 1992.

Thereafter, on October 7, 1992, Larsen filed in superior court a petition for an alternative writ of mandate (Code Civ. Proc., § 1085), requesting that the court order the DMV to set aside the suspension of his driving privilege, upon the ground that his conviction in New York was invalid because he had not been advised of his rights (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; see *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) prior to entering a guilty plea.[5] After a hearing, the superior court denied the requested writ. On appeal, the Court of

---

[3]New York Vehicle and Traffic Law section 1192, subdivision (1), provides: "Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."

Neither party claims that a violation of this section is not equivalent to a violation of section 23152.

[4]The New York licensing authority apparently notified the California DMV pursuant to the Driver License Compact (§ 15022), affording reciprocal notification of certain driving violations. The compact, to which New York also is a party state (N.Y. Veh. & Traf. Law, § 516), is intended to increase highway and street safety by enhancing the degree of compliance with laws governing the operation of motor vehicles in party states. (§ 15000.)

[5]The record reflects that, prior to the hearing on the writ petition, the Attorney General submitted a letter from the justice court in New York, explaining that at the time Larsen entered his guilty plea, the Clifton Park town justice, pursuant to *Boykin* v. *Alabama, supra,* 395 U.S. 238, properly had advised Larsen, and had received waivers by Larsen (and by Larsen's attorney on his behalf) of his constitutional rights. The town justice further advised that, although no record was made of such advice and waiver, it was that town justice's "custom to advise the defendant of all rights prior to his or her plea of guilty." The high court in *Boykin* v. *Alabama, supra,* 395 U.S. 238, advised that a waiver of the privilege against

Appeal, in a two-to-one decision, reversed. We granted review to resolve the conflict in the decisions of the Courts of Appeal.

## II

In numerous instances under provisions of California law, a criminal conviction may give rise to a variety of collateral consequences. Perhaps the most common context is the use of prior convictions to increase the term (or impose other penal sanctions, such as ineligibility for probation) in the event the defendant is convicted of a subsequent offense. (See *People* v. *Calderon* (1994) 9 Cal.4th 69, 71-72 [36 Cal.Rptr.2d 333, 885 P.2d 83].) A conviction, however, frequently may have consequences outside the criminal context, and, for example, may provide a basis for the suspension or revocation of a license or other benefit that the state has granted to the convicted individual. (See, e.g., § 13352, subd. (a)(1); Bus. & Prof. Code, §§ 490, 10177, subd. (b); Ed. Code, § 44424.) In each of these situations, whenever the state seeks to take action against an individual on the basis of a conviction, he or she may attempt to challenge the state's action on the ground that the conviction upon which the state is relying is constitutionally invalid.

In California, the Legislature has not enacted a generally applicable statute addressing the question whether, and in what manner, an individual may raise a collateral challenge to the constitutionality of a conviction. Thus, the courts of this state have addressed this issue in the various contexts in which it has arisen.

We first addressed in the criminal context the question of the proper procedure for challenging the constitutional validity of a conviction that the state was proposing to employ for collateral purposes. In *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913] this court recognized the propriety of bringing a habeas corpus petition in a California court to challenge a sentence that had been based, in part, upon prior convictions that the defendant contended were constitutionally invalid because he had not been represented by counsel in the underlying proceedings. (*Id.* at p. 5.) In that context, the court in *Woods* recognized that even when the challenged conviction arose from out-of-state proceedings, the defendant properly could raise in a California court a constitutional challenge to the conviction. (*Ibid.*) Thereafter, in *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], this court held that when a prior conviction was being employed in a California criminal proceeding as a basis for increasing the defendant's

---

self-incrimination, the right to confrontation of witnesses, and the right to jury trial, may not be presumed from a silent record and that such a waiver should appear on the record. (*Id.* at pp. 242-243 [23 L.Ed.2d at pp. 279-280]; *In re Tahl, supra*, 1 Cal.3d 122, 132.)

punishment, the defendant not only could bring a habeas petition after the increased sentence had been imposed, but could challenge the validity of the prior conviction during the criminal proceeding itself, by a pretrial motion to strike the prior as constitutionally invalid. (*Id.* at pp. 214-215.)

Three years after the decision in *Coffey* was rendered, a question relating to the proper procedure for challenging the validity of a conviction upon which the state was relying (as a basis for suspending an individual's driver's license) came before this court in *Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335. In that case, a driver had been convicted in California in 1966, without representation by counsel, of driving under the influence, and again in 1968 he was convicted in this state of a similar offense, on this occasion with representation by counsel. We rejected the driver's attempt to overturn the DMV's suspension of his driver's license (pursuant to section 13352), following the driver's second conviction of driving under the influence, by challenging the constitutional validity of the 1966 conviction in a mandate action against the DMV. (3 Cal.3d at p. 338.)

Noting that our earlier decisions in *Woods* and *Coffey* had established that prior convictions may be collaterally attacked in subsequent adjudications of new offenses subject to enhancement based upon those prior convictions, we recognized that the driver could have attacked the 1966 judgment in the course of the proceedings arising in 1968, because the 1966 conviction served as a basis for increasing the *penal* sanctions imposed against him in the 1968 proceedings. (*Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335, 337-338.) We explained that the act of the DMV in suspending a driver's license pursuant to section 13352, by contrast, is merely an "administrative act in performing a mandatory function" (3 Cal.3d at p. 338), and that the DMV, having received abstracts of judgments for the driver's two prior convictions of driving under the influence, simply was required to suspend his driving privilege, without possessing any corresponding duty to decide the validity of the prior convictions. (*Ibid.*; see also Cal. Const., art. III, § 3.5.) The issue presented in the case before us arises in the wake of our decision in *Thomas.*

## III

The initial question posed by the present case is whether our opinion in *Thomas* was intended to apply to out-of-state convictions that have not been alleged in any California proceeding. As noted, plaintiff contends the *Thomas* decision should not be applied in this context, and the DMV argues it should.

Nothing in *Thomas* itself suggests that our opinion was not intended to apply in these circumstances, and Justice Peters's dissent in *Thomas* makes it

quite clear that he interpreted the court's decision as applicable to out-of-state convictions, thus requiring a driver in such a situation to return to the state in which the conviction was rendered and there challenge the conviction. (*Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335, 340-341.) Justice Peters's dissent stated in this regard: "The procedures imposed by the majority, contrary to our past decisions, will impose undue burdens of time and money on citizens having to vindicate their constitutional rights to counsel. *The citizen with a prior out-of-state conviction will bear an even heavier burden: he will now be forced to return to that state in order to attack the conviction if he wishes to drive in California. We refused to erect such barriers in In re Woods, supra,* 64 Cal.2d 3, 5; there is no justification for doing so here." (3 Cal.3d at p. 341, italics added.) The majority in *Thomas* did not dispute Justice Peters's observation that the opinion would apply to out-of-state convictions, nor did it suggest that its opinion would not place such a burden upon a driver with an out-of-state conviction.

Further, shortly after the *Thomas* decision was rendered, the Court of Appeal in *Cook* v. *Department of Motor Vehicles, supra,* 33 Cal.App.3d 265, explicitly held that *Thomas* applies to out-of-state convictions that have not been alleged in a California criminal proceeding, thus requiring the driver to challenge the questioned conviction in the rendering jurisdiction. (33 Cal.App.3d at p. 267 ["The fact that petitioner's convictions are out-of-state does not obviate the *Thomas* holding. (See dissent of Justice Peters in *Thomas* v. *Department of Motor Vehicles, supra,* at p. 341.)"].) The Legislature has not acted to express any disapproval of the 1973 holding in *Cook,* and, in *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367 [211 Cal.Rptr. 748, 696 P.2d 141], more than a decade after *Cook* was rendered, we explicitly cited *Cook* with approval in concluding that "a driver who contests the validity of prior convictions is entitled to bring a challenge against these convictions *within the rendering court system.*" (38 Cal.3d at p. 380, italics added.) Therefore, it appears that this court's decisions support the view that the *Thomas* rule was intended to apply in the present setting, and that no exception exists for cases involving out-of-state convictions that have not been alleged in a California criminal proceeding.

The Court of Appeal in *Axness* v. *Superior Court, supra,* 206 Cal.App.3d 1489, reached a contrary conclusion, primarily by relying upon California precedent holding that when a prior out-of-state conviction is alleged as a sentence enhancement in a *criminal* proceeding, the defendant is not limited to raising, in the rendering court system, his or her constitutional challenge to the out-of-state conviction, but rather may contest its validity in the California proceeding directly. In *Thomas,* however, we specifically distinguished the *administrative* use of prior convictions, to suspend or revoke a

driver's license, from the use of such convictions to impose enhanced *penal* sanctions, holding that in the administrative context it is proper to place the burden upon the driver to raise any constitutional challenge in the other forum. For this reason, we conclude that the Court of Appeal in *Axness* erred in relying upon the precedent permitting challenge of out-of-state convictions in a pending California *criminal* proceeding.[6] Accordingly, the decision in *Axness* v. *Superior Court, supra,* 206 Cal.App.3d 1489, is hereby disapproved.[7]

---

[6]We believe that our decision in *Thomas* should have made clear that the suspension of a driver's license is *not* a "penal" sanction bringing into play the *Coffey* procedure, inasmuch as we held specifically in *Thomas* that the *Coffey* procedure did not apply to the driver's license suspension proceeding at issue in that case. (*People* v. *Thomas, supra,* 3 Cal.3d at p. 338.) In other contexts as well, the suspension or revocation of a driver's license generally has been viewed as a sanction that is "civil" rather than penal. (See, e.g., *Baldwin* v. *Department of Motor Vehicles* (1995) 35 Cal.App.4th 1630, 1638-1642 [42 Cal.Rptr.2d 422] [suspension of driving privilege upon conviction, pursuant to section 13352, is not solely retributive or deterrent in nature and does not violate the double jeopardy clause of the Fifth Amendment]; *McDaniel* v. *Department of Motor Vehicles* (1994) 22 Cal.App.4th 76, 80-81 [27 Cal.Rptr.2d 149] [failure of criminal court to inform the defendant at sentencing of requirement of completing approved alcohol rehabilitation program did not mitigate DMV's mandatory duty pursuant to section 13352 not to reinstate license without proof he had completed program; DMV's duty is civil in nature and independent of criminal action arising from the same offense]; *Corley* v. *Department of Motor Vehicles* (1990 ) 222 Cal.App.3d 72, 77-78 [271 Cal.Rptr. 406] [failure of criminal court to advise defendant of license suspension as consequence of nolo contendere plea agreement did not affect DMV's mandatory duty pursuant to section 13352 to suspend license]; *Ellis* v. *Department of Motor Vehicles* (1942) 51 Cal.App.2d 753, 758-759 [125 P.2d 521] [provision that DMV may consider past offense in determining whether to reissue driver's license does not constitute penal statute within the meaning of the prohibition against ex post facto laws, because the statutory intent is to protect the public rather than punish licensees]; accord, *Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 847, 857 [25 Cal.Rptr.2d 500, 863 P.2d 745] [determination prior to criminal trial (on charge of driving under the influence) that peace officer's stop and detention was unlawful did not preclude DMV from suspending the driver's license pursuant to section 13353.2; administrative proceedings related thereto are civil in nature]; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 51 [181 Cal.Rptr. 613] [proceedings related to suspension of driving privilege for refusal to take chemical test pursuant to section 13353 are civil in nature].)

[7]In *Axness,* the driver in a California mandate proceeding had challenged the DMV's suspension of his California driver's license on the ground that a prior Minnesota driving under the influence conviction, relied upon by the DMV, was constitutionally flawed. After the superior court initially sustained a demurrer to the petition with leave to amend, the driver initiated a proceeding in Minnesota to vacate the prior Minnesota conviction, but the Minnesota court rejected the challenge. The driver then filed an amended petition in the California mandate proceeding, maintaining that because the DMV had relied upon the Minnesota prior as a basis for suspending his California driver's license, he was entitled to have the constitutionality of the Minnesota prior determined by a California court in a proceeding challenging the license suspension. Although the trial court rejected the driver's claim, the Court of Appeal in *Axness* held that, under *Coffey,* the driver was entitled to raise such a constitutional challenge to the Minnesota prior in the California mandate proceeding.

Our disapproval of the *Axness* decision extends both to the decision's conclusion that the DMV's suspension of a driver's license is a "penal" sanction within the meaning of the *Coffey*

Plaintiff further contends, however, that even if the *Thomas* decision is interpreted to apply in the present context, and thus to establish that the governing California statutory scheme does not permit a driver to raise a constitutional challenge to an out-of-state conviction in a mandate action brought against the DMV but rather requires that the driver contest the validity of the prior in the rendering jurisdiction, the establishment of such a procedure would be unconstitutional. Plaintiff argues, in essence, that if California elects to authorize the DMV to suspend or revoke a driver's license upon the basis of an out-of-state conviction of driving under the influence, it must provide the driver with a *California* forum in which to challenge the constitutionality of the conviction.

In analyzing plaintiff's constitutional claim, it is important to understand the narrow issue presented. To begin with, California has not purported to adopt a procedure that authorizes the suspension or revocation of a driver's license on the basis of a conviction that has been determined to be constitutionally invalid. Instead, as is demonstrated by the decisions in *Thomas* v. *Department of Motor Vehicles, supra,* 3 Cal.3d 335, 338, and *Hasson* v. *Cozens* (1970) 1 Cal.3d 576, 579 [83 Cal.Rptr. 161, 463 P.2d 385], if a driver has had a conviction set aside because it is constitutionally invalid, under California law the DMV may not rely upon the conviction as a basis for suspending or revoking the driver's license. Second, in the present case plaintiff does not suggest that the State of New York provides no means for raising a constitutional challenge to the conviction at issue.

Therefore, the constitutional issue before us is simply whether California has violated the federal Constitution by providing that when a driver has suffered an out-of-state conviction that he or she contends is constitutionally invalid, he or she, in order to avoid the adverse effect that such a conviction may have upon the driver's California driving privileges, must raise any constitutional objection to the out-of-state conviction in the rendering jurisdiction. Plaintiff cites no authority supporting his assertion that, in the administrative context, a state that authorizes the suspension or revocation of a driver's license upon the basis of an out-of-state conviction may not require the driver to raise any constitutional objection to the conviction in the court system in which the conviction was rendered, and instead *must* permit the driver to litigate the validity of the out-of-state conviction in the driver's own state. *Even in the criminal context*, a number of states other than California require a defendant who challenges the validity of a prior out-of-state conviction to raise any challenge to the conviction in the courts of the

decision, and to the decision's conclusion that a driver may raise such a constitutional challenge to a prior out-of-state conviction in a California mandate proceeding after unsuccessfully challenging the prior conviction in the rendering jurisdiction.

rendering state (e.g., *Harwood* v. *State* (Ind. Ct. App. 1990) 555 N.E.2d 513, 517; *Handley* v. *State* (Miss. 1990) 574 So.2d 671, 680), and the United States Supreme Court's recent decision in *Custis* v. *United States* (1994) 511 U.S. 485, __ [128 L.Ed.2d 517, 526-530, 114 S.Ct. 1732, 1737-1739] makes it clear that, at least when the defendant was represented by counsel in the prior proceeding, such a procedural requirement is permissible under the federal Constitution. (Cf. *People* v. *Horton* (1995) 11 Cal.4th 1068, 1126-1141 [47 Cal.Rptr.2d 516, 906 P.2d 478] [discussing a constitutional challenge to a prior conviction in a *capital* proceeding].) Accordingly, we reject plaintiff's contention that application of the holding in *Thomas* to the present case would violate his constitutional rights.

## IV

The judgment of the Court of Appeal is reversed, and that court is directed to enter judgment denying the petition for writ of mandate.

Lucas, C. J., Arabian, J., Baxter, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur in the judgment.

Charles Larsen's driver's license was suspended by the Department of Motor Vehicles (hereafter DMV), pursuant to Vehicle Code section 13352, based on his conviction in New York of "driving while ability impaired." He petitioned for a writ of mandate in the superior court (Code Civ. Proc., § 1085) to direct the DMV to set aside the suspension, on the ground that the out-of-state conviction was invalid because he had pleaded guilty to the violation without having been advised of his federal constitutional rights. Specifically, he alleged that the trial court failed to obtain a personal, on-the-record waiver of certain of his rights under the United States Constitution—namely, his privilege against self-incrimination, his right to a jury trial, and his right to confront adverse witnesses. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].)

Applying *Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858] (hereafter *Thomas*), the majority conclude that Larsen may not challenge the constitutionality of the out-of-state conviction in a mandate proceeding directed against the DMV. Instead, he must challenge his conviction in the out-of-state forum; if he is successful, Vehicle Code section 13352 will cease to apply.

*Thomas* held that a mandamus proceeding could not be directed against the DMV, because that agency, in suspending a license pursuant to Vehicle

Code section 13352, was merely performing a ministerial function. (3 Cal.3d at p. 338.) Instead, a defendant must challenge the validity of a prior conviction either by an action in the court that rendered it or in a mandate proceeding directed at the rendering court. (3 Cal.3d at p. 338.)

In *Thomas*, the prior conviction was rendered by a California court. Here, because Larsen was convicted in New York, he is limited to the first alternative, i.e., he may challenge the prior conviction in the rendering court in New York; he may not do so in a mandate proceeding directed at the rendering court (a California court has no power to direct the New York court to set aside its judgment). The rationale in *Thomas* nonetheless applies: the DMV cannot be subject to a mandamus proceeding to review the validity of a prior conviction regardless of where the conviction occurred.

The Court of Appeal below concluded that because suspension of a driver's license is a *punishment* based on a prior conviction that may be constitutionally invalid, California must provide a forum to attack the prior conviction. The premise is defective: the suspension of a driver's license is a civil penalty; there are no cases holding that a California forum must be available to challenge the constitutionality of a prior conviction when it is the basis for a *civil* penalty. (*Moomjian* v. *Zolin* (1993) 12 Cal.App.4th 1606, 1612 [16 Cal.Rptr.2d 335] ["license suspension . . . is a civil, not a criminal, sanction"]; *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380-381 [211 Cal.Rptr. 748, 696 P.2d 141] ["The thrust of the legislative concern under Vehicle Code section 13352 [is] protection of the public from drivers whose prior conduct demonstrates they cannot currently be trusted with a license to drive."]; cf. *People* v. *Coffey* (1967) 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15] [" 'To the extent that any State makes its *penal sanctions* depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.' "], italics added.)

I therefore agree with majority. Larsen must seek relief in New York.

In my view, however, a different result would follow if the conviction were "void on its face"—a condition that is not satisfied here. In such a case, mandamus may be directed against the DMV to prevent it from acting on a conviction rendered either in this state or elsewhere. (*Williams* v. *Department of Motor Vehicles* (1969) 2 Cal.App.3d 949, 954 [83 Cal.Rptr. 76] [if conviction is "void on its face," a defendant is "entitled to collaterally attack it by seeking a writ of mandate" directed to the DMV]; *Houlihan* v.

*Department of Motor Vehicles* (1970) 3 Cal.App.3d 915, 919, fn. 4 [83 Cal.Rptr. 885] [to the same effect].)[1]

Similarly, a writ of mandate would lie against the DMV if it acted in excess of its authority. For example, the DMV is authorized to suspend or revoke the driving privilege of any person convicted of an offense in any American or Canadian jurisdiction, "which, if committed in this state, would be a violation of [Vehicle Code] Section 23152." (Veh. Code, § 13352, subd. (d).) Suspension or revocation of the driving privilege that did not comport with this provision would, accordingly, be subject to adjudication in a writ of mandate directed to the DMV. Indeed, a driver would have no other forum for challenging the legal conclusion of the DMV that the out-of-state offense would have violated Vehicle Code section 23152.

For the reasons stated, I join the majority in reversing the judgment of the Court of Appeal.

**KENNARD, J.**—I concur fully in the judgment and in the majority opinion with the understanding that petitioner has not effectively contended that, and this court has not determined whether, any provision of the California Constitution requires that there be an in-state forum in which a licensee may obtain a determination of the validity of an out-of-state conviction used under Vehicle Code section 13352 as the basis for a license suspension.

---

[1]There is an additional remedy for a driver who contests the *accuracy of DMV records* of prior convictions. As noted in *Pollack* v. *Department of Motor Vehicles, supra,* 38 Cal.3d at page 380, footnote 8, Vehicle Code section 13352 "mandates suspension or revocation only upon receipt of a duly certified abstract of a court record reflecting a drunk driving conviction, and in the case of multiple offenses, only where DMV records reflect prior convictions. If the DMV records are inaccurate or if there is a mistake as to identity, license suspension is not mandatory by the provisions of the code. Under the terms of [Vehicle Code] section 14101, therefore, a driver who contests the accuracy of DMV records of prior convictions may not be denied the opportunity for an administrative hearing to demonstrate that suspension is not mandatory in his case."