Filed 7/2/14  P. v. Gouveia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039981 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC635647) |
| v. | |
| BRIAN JOSEPH GOUVEIA, | |
| Defendant and Appellant. | |

"Independently of statute and on its own motion or on ex parte applications without notice, and regardless of time elapsed, the court may exercise its power to correct clerical errors.  [Citations.]" (*People v. Flores* (1960) 177 Cal.App.2d 610, 613.)  It is not open to question that "a court, in criminal as well as civil cases, has inherent power to correct clerical errors in its records at any time so as to make these records reflect the true facts.  [Citations.]  This rule allowing correction of clerical error, whether made by the clerk, counsel, or the court itself, is to be distinguished from the situation involving judicial error, which can only be corrected by appropriate statutory procedure.  [Citations.]  The distinction between clerical error and judicial error is that the former is inadvertently made while the latter is made advertently as the result of the exercise of judgment.  [Citations.]" (*People v. Shultz* (1965) 238 Cal.App.2d 804, 807.)

In this appeal, we must determine whether it was clerical error or judicial error that the court was trying to correct when almost six years after the court rendered

judgment in this case the court amended the minute order from the sentencing hearing to reflect that the Department of Motor Vehicles was to revoke appellant's driving privilege for life.

*Facts and Proceedings Below*

In 2007, pursuant to a negotiated disposition, appellant pleaded no contest to assault with a deadly weapon, to wit, a vehicle, in case No. CC635647. (Pen. Code, former § 245, subd. (a).)[1] In exchange for his plea, appellant was promised that he would receive a one-year prison term (top/bottom) that would be consecutive to a two-year prison term imposed in two other cases—BB257184 and E9911993. Before he entered his plea, the court told appellant "[t]here is one very serious consequence as a result of pleading guilty or no contest to this charge and that is that your license to drive will be suspended or revoked by the Department of Motor Vehicles and, as a condition of the sentencing in this matter, it will be for life."

At the sentencing hearing in this case, the court denied probation and pursuant to the plea bargain sentenced appellant to a one-year prison term consecutive to his sentence in BB257184. The probation officer informed the court that appellant had "credited out" on the one-year sentence in this case. The court imposed various fines and fees but made no mention of the lifetime ban on driving in rendering judgment. Furthermore, the minute order from the sentencing hearing does not contain any notations in the section that reads "☐ DL Susp/Restr'd/Revk'd for ____"; or any other notation that would indicate a lifetime revocation of appellant's driving privilege. Similarly, the abstract of judgment is bereft of any order for a lifetime revocation of appellant's driving privilege.

---

[1]    At the time appellant committed his crime, subdivision (a)(1) of Penal Code section 245 provided, "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Stats. 2004, ch. 494, § 1.)

2

Judgment in a criminal case is rendered when sentence is pronounced. (*People v. Thomas* (1959) 52 Cal.2d 521, 529, fn. 3.) "The pronouncing of sentence is a judicial act." (*In re Larsen* (1955) 44 Cal.2d 642, 647.) Thus, the sentence in this case was devoid of any lifetime ban on appellant driving.

On December 12 and December 19, 2012, the same superior court judge that had imposed judgment set a hearing date in this case—initially for January 14, 2013, then for January 7, 2013. At the January 7 hearing, the court explained that it had been "brought to the Court's attention that there was an omission at the time of sentencing. At the time of the plea [appellant] was advised that he would not have a driver's license for the balance of his life and I'm going to at this point amend the Abstract of Judgment to show a revocation of the California driving privilege under Vehicle Code section" 13351.5. The court continued the matter to allow appellant to be present at the hearing. The court wanted to "see if there are any issues that [defense counsel] wants to point out to the Court specifically on this. He was advised. It was a very busy sentencing calendar as I had in domestic violence. It was not on the Probation recommendations. There is a body of law that says that an omission at the time of sentencing is an act of judicial grace and the defendant is entitled to that benefit. By the same token, that is applied in certain situations where priors have been stricken because of the Court error and there being judicial errors. I am not sure at this point whether I had the jurisdiction to do it. I am doing it, but I would like to hear more from [defense counsel] and [the prosecutor] about whether I do have jurisdiction to now impose this that was left off in the original sentence. But I am imposing it." The minute order from this hearing contains a check mark in the box before "DL Susp/Restr'd/Revk'd for" and the following handwritten notation "LIFETIME[.]" No amended abstract of judgment appears in the record.

At the continued hearing on January 8, 2013, the court explained that it had been brought to the court's attention that appellant had been driving and this was "contrary to the intent of the Court." The court continued the matter to February 15th to allow the

3

parties to brief the matter and ordered the reporter's transcript from the initial plea agreement hearing and the sentencing hearing. Ultimately, on June 4, 2013, after the court had reviewed the briefing submitted by the parties and listened to argument, the court noted for the record that "there are two issues . . . . [¶] The first is the power of the Court within 120 days to modify an Abstract of Judgment having had the time passage lapse. The second is the power of the Court to modify or otherwise correct what is clearly an error. And I have not classified either as judicial or clerical at this point. [¶] I believe that the Court has inherent power to correct errors that occur legally that affect the parties before the court even after the 120 days. The Court technically loses jurisdiction, but there are certain items such as restitution and other matters that the Court can address on equitable grounds. So I think that on that level, there is jurisdiction to act. [¶] The second is whether my initial order back in January 7th of 2013 of, in fact, revoking [appellant]'s driving privilege was consistent with a judicial or clerical error. *Candelario*[2] is the primary case as far as the Court is concerned as to whether I can correct. [¶] During the negotiations of this case, indeed, during the voir dire of [appellant], during the course of the proceedings, it became very clear that the Court had to revoke. We had no other authority other than to have the People change the nature of the pleading involved, which did allege a vehicle. That was not done by Mr. Zarzana, who was the deputy district attorney having control of the case. And as a consequence, [appellant] was voir dired, and I'm positive this enormous consequence was discussed with his counsel. [¶] In the Court's opinion, this is not the type of situation that was in *Candelario*. In that case, the defendant had a prior conviction and it is a part of the sentencing process at that time, which I think was indeterminant [sic] sentencing, and it still stayed with us that the Court had to independently impose a judgment increasing the amount of years that a defendant would do as a part of the process. [¶] The failure to do

---

[2]     *In re Candelario* (1970) 3 Cal.3d 702 (*Candelario*).

4

that under *Candelario* is viewed as a benefit. It's viewed as an exercise of discretion because the Court had failed to place it on the record that he was excused from the provision at that time of the prior conviction. [¶] In this particular case, this is almost a self-executing provision of law that if a defendant is convicted of this offense, then the revocation by DMV will naturally occur. This was not picked up by [the] people there in the courtroom and clearly I omitted it, and it was an error as far as I was concerned that it was more in the nature of a clerical one than a judicial one. [¶] This is the type of paperwork that has normally drawn attention of the abstract desk and I believe that there was a clear intent to impose the revocation at the time of sentencing based on the voir dire that was gone into and the care that it was given by all parties concerned. I'm, therefore, keeping the initial order in effect."

## *Discussion*

The question presented here is can the lower court correct the original sentencing minutes in this case, which is all that we have in the record, nunc pro tunc? The resolution of the issue depends on whether the lower court was trying to impose a criminal sanction by its nunc pro tunc order or set in motion a civil consequence.

At the heart of this case are two Vehicle Code sections, 13351.5 and 13210. Vehicle Code section 13351.5, provides, in pertinent part: " (a) Upon receipt of a duly certified abstract of the record of any court showing that a person has been convicted of a felony for a violation of Section 245 of the Penal Code and that a vehicle was found by the court to constitute the deadly weapon or instrument used to commit that offense, the department immediately shall revoke the privilege of that person to drive a motor vehicle. [¶] (b) The department shall not reinstate a privilege revoked under subdivision (a) under any circumstances."

Vehicle Code section 13210 provides as relevant here, "In addition to the penalties set forth in subdivision (a) of Section 245 of the Penal Code, the court may order the suspension of the driving privilege of any operator of a motor vehicle who commits an

5

assault as described in subdivision (a) of section 245 of the Penal Code on . . . a pedestrian and the offense occurs on a highway." According to the probation officer's report in this case, after an argument between appellant and the victim, the victim got out of appellant's car; appellant pulled up beside the victim, put his car into reverse and turned the front toward the victim. The victim was struck in the shoulder by the car; she sustained a broken collarbone and a wound to her shoulder.

With these provisions in mind, we turn to the law regarding orders made nunc pro tunc.

A nunc pro tunc modification of an order is an entry made in the present that has effect as of the order's original date. (See *In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851.) Nunc pro tunc modifications may resolve only true clerical errors. (*People v. Kim* (2012) 212 Cal.App.4th 117, 124.)

When clerical errors in the judgment or order are corrected by the court under its inherent power, the order of correction may, if necessary, be made nunc pro tunc as of the time of the original entry, and this is true regardless of lapse of time. (*LaMar v. Superior Court* (1948) 87 Cal.App.2d 126, 129, disapproved on another point in *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 371; *Wilson v. Wilson* (1948) 88 Cal.App.2d 382, 384.) However, " 'it is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did. An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded. It may not be used as a vehicle to review an order for legal or judicial error by "correcting" the order in order to enter a new one.' [Citation.]" (*In re Marriage of Padgett, supra,* 172 Cal.App.4th at p. 852.)

Our decision in this case turns on well-established principles limiting the use of nunc pro tunc entries to correct errors or omissions in the original order or judgment.

6

In *Estate of Eckstrom* (1960) 54 Cal.2d 540 (*Eckstrom*), the California Supreme Court explained, "[a] court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a *nunc pro tunc order*. [Citations.] It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made . . . . (*Id*. at p. 544.) " 'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?' " (*Ibid*.) The court went on to hold that nunc pro tunc orders may not be made to "make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which [as here] ought to have been so pronounced. [Citations.]" (*Ibid.*) "It is only when the form of the judgment fails to coincide with the substance thereof, as intended *at the time of the rendition of the judgment*, that it can be reached by a corrective *nunc pro tunc order*." (*Id*. at p. 545, italics added.)

At the time of sentencing the court made no mention of imposing the lifetime ban on appellant driving. Certainly, it appears that the court intended to impose such a ban and the record supports the inference that it was a part of the plea bargain in this case. There is some supporting authority for the proposition that the order made undoubtedly was not that which the court ought to have made, and therefore it should be subject to correction. In *Estate of Goldberg* (1938) 10 Cal.2d 709 (*Goldberg*), the court noted, "In 14 California Jurisprudence, pp. 995, 996, the rule is thus stated: 'But the power to amend is not wholly confined to the correction of an erroneous record; it extends also to cases where some provision of or omission from an order or judgment as made or rendered was due to the inadvertence or mistake of the court and may therefore properly be treated as a clerical misprision rather than a judicial error. . . . There are many cases in

7

which it so clearly appears that the judgment as entered is not the sentence which the law ought to have pronounced upon the facts as established by the record, that the court acts upon the presumption that the error is a clerical misprision rather than a judicial blunder, and sets the judgment, or rather the judgment entry, right by an amendment *nunc pro tunc*' . . . ." (*Id*. at pp. 715-716.)[3]

Numerous instances exist in which nunc pro tunc orders have been held to be proper to correct clerical errors. A few examples include orders correcting (1) an abstract of judgment that erroneously showed sentences were to run concurrently when the order in fact was that they were to run consecutively (*People v. Flores* (1960) 177 Cal.App.2d 610, 613–614); (2) a judgment where the court found defendant guilty of a particular offense but cited a code section that did not correspond with the offense (*People v. Shirley* (1970) 10 Cal.App.3d 268, 275; *People v. Schultz* (1965) 238 Cal.App.2d 804, 807–808); (3) an order committing the defendant based upon his current insanity (under Penal Code section 1368), where the court erroneously cited the statute (§ 1026) under which a court may issue a commitment order after a finding that the defendant was insane when the offense was committed (*People v. Anderson* (1976) 59 Cal.App.3d 831, 839); and (4) a judgment where there has been an incorrect calculation of presentence credits (*People v. Jack* (1989) 213 Cal.App.3d 913, 915–918). However, in other cases, courts have rejected attempts to correct judicial errors by subsequent nunc pro tunc orders. (See, e.g., *Candelario, supra,* 3 Cal.3d at pp. 706–707 [failure of oral pronouncement of judgment, and abstract to contain judicial finding that prior felony conviction allegation

---

[3]     In the *Goldberg* case a will directed that certain property be divided among four children of the decedent, the petition for distribution prayed for distribution to those entitled, and a minute order directed that a decree be prepared in accordance with the terms of the will. The decree omitted the name of one of the decedent's children, and the error was corrected by a nunc pro tunc order made some thirty-five years after entry of the decree. (*Goldberg*, *supra*, 10 Cal.2d, at pp. 710-711.) The effect of the nunc pro tunc order was to make the decree of distribution conform to the exact provisions of the will. (*Id*. at p. 711.)

8

was true could not be corrected by amendment to abstract]; *In re Wimbs* (1966) 65 Cal.2d 490, 498 [purported correction of sentence to run concurrently, rather than consecutively as originally pronounced, improper]; *People v. Drake* (1981) 123 Cal.App.3d 59, 63–64 [court sentence of six years based upon application of middle term could not be later corrected nunc pro tunc to apply upper term in order to impose 10–year aggregate sentence intended]; *Albori v. Sykes* (1937) 18 Cal.App.2d 619, 622 [court's express declination to order two sentences to run either concurrently or consecutively could not be later corrected nunc pro tunc to have sentences run concurrently].)

However, our research has failed to disclose any decision wherein the language quoted in *Goldberg*, *supra*, 10 Cal.2d at pp. 715-716, has been applied in the courts of this state in a criminal case to correct a judgment or order to conform to what that judgment or order "ought to have" provided.

An invalid nunc pro tunc order is void for lack of jurisdiction. (See *APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 186 [trial court was without authority in making improper nunc pro tunc order]; *In re Marriage of Padgett, supra,* 172 Cal.App.4th at p. 855 [order was void when trial court exceeded its power in making improper nunc pro tunc order].)

Under Vehicle Code section 13210 the lower court had the power to impose a criminal sanction on appellant and had the court been trying to impose a penal sanction with its nunc pro tunc order we would find it void for lack of jurisdiction. However, we are convinced that the lower court was not trying to impose a penal sanction in this case because the court could not have imposed a lifetime ban on appellant driving since Vehicle Code section 13210 provides for a suspension of only "six months for a first offense and one year for a second of subsequent offense."

That being said, amending the sentencing minutes nunc pro tunc caused the line between imposing a penal sanction and setting in motion a civil consequence to become

9

blurred.  We believe a straightforward and less contentious way to proceed is for the lower court to amend the abstract of judgment in this case.

It is the DMV that administratively suspends a driver's license pursuant to Vehicle Code section 13351.5.  (See *Larsen v. Department of Motor Vehicles* (1995) 12 Cal.4th 278, 284, [the act of the DMV in suspending a driver's license pursuant to Vehicle Code sections authorizing them so to do is an administrative act in performing a mandatory function and the DMV, having received an abstract of judgment is simply required to suspend the defendant's driving privilege].).  The DMV's suspension of appellant's driving privilege under Vehicle Code section 13351.5 is substantively distinct from any punishment a court may impose as a result of a criminal conviction.  In other words, the DMV's lifetime suspension, imposed pursuant to Vehicle Code section 13351.5, is an administrative civil sanction that is independent of the trial court's penal sanction.  "In numerous instances under provisions of California law, a criminal conviction may give rise to a variety of collateral consequences."  (*Larsen v. Department of Motor Vehicles*, *supra*,12 Cal.4th at p. 283.)  This is one such case.  The abstract of judgment in this case reflects that appellant was convicted by plea of "Assault w/deadly weapon or by means of force likely to produce GBI[.]"  This was clerical error; in fact, appellant was convicted by plea of "assault upon the person of Melinda Mayer . . . with a deadly weapon, an instrument other than a firearm, to wit, *a vehicle* by means of force likely to produce great bodily injury." (Italics added.)

At the time appellant entered his plea the court explained the charges as follows: "Count 1 alleges on or about June 15, 2006, County of Santa Clara, State of California, crime of assault with a deadly weapon or by means of force likely to produce great bodily injury, in violation of Penal Code section 245(A)(1), a felony, was committed by you in that you did commit an assault upon the person of Melinda Mayer . . . with a deadly weapon, an instrument other than a firearm, to wit, *a vehicle* by means of force likely to produce great bodily injury.  [¶]  To that charge what is your plea?" (Italics added.)

10

Appellant responded "no contest." Thus, there can be no question in this case that appellant was convicted of a felony for a violation of section 245 of the Penal Code and that a vehicle constituted the deadly weapon or instrument used to commit the offense. Appellant so admitted by pleading no contest. Since appellant admitted that the deadly weapon was a vehicle, it was not necessary for the judge to make an independent determination that the weapon used was a vehicle. (See *In re Candelario*, *supra*, 3 Cal.3d at p. 706, [since petitioner admitted the prior conviction, the trier of fact need not have made an independent determination of its validity.].) Although Vehicle Code section 13351.5 requires a duly certified abstract of the record of a court showing that a person has been convicted of a felony for violation of Penal Code section 245 and that a vehicle was found by the court to constitute the deadly weapon, it does not require that the court make an express finding on the record at the sentencing hearing and inform the defendant that it has made such a finding. We presume the trial court performed its duty to make the required finding. (Evid. Code, § 664.) We have no doubt given the court's advisement to appellant that "as a result of pleading guilty or no contest" the Department of Motor Vehicles would "suspend[] or revoke[]" his driver's license "for life" that the court impliedly had made such a finding. We are unaware of any decision requiring that the court make express findings on the record at the time of sentencing. As such the abstract of judgment may be amended to reflect the true facts.

*Disposition*

The court's January 7, 2013 order amending the sentencing minutes nunc pro tunc is reversed. However, the court may correct the abstract of judgment in this case to

reflect the fact that appellant pleaded no contest to assault with a deadly weapon, to wit, a vehicle, by means of force likely to produce great bodily injury.

 

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.