Filed 9/23/16  Deligiannis v. DMV CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THEOPHILOS LUIS DELIGIANNIS, | |
| Plaintiff and Appellant, | G051093 |
| v. | (Super. Ct. No. 30-2013-00682822) |
| DEPARTMENT OF MOTOR VEHICLES, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Theophilos Luis Deligiannis, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Chris Knudsen, Assistant Attorney General, Kenneth C. Jones and Michelle Logan-Stern, Deputy Attorneys General, for Defendant and Respondent.

Theophilos Luis Deligiannis appeals from a judgment after the trial court denied his petition for writ of mandate to set aside the DMV's suspension of his driver's license. Deligiannis argues the court erred because the DMV exceeded the scope of its authority when it suspended his license and the DMV's failure to provide him an administrative hearing prior to suspending his license violated his due process rights. None of his contentions have merit, and we affirm the judgment.

FACTS

After an automated traffic enforcement camera identified Deligiannis failing to stop at a red light, he was served with a form TR-115 alleging he violated Vehicle Code section 21453, subdivision (a),[1] and ordering him to appear at the Central Justice Center in Santa Ana on or before March 25, 2013. The reverse side of the form stated the following: "You must respond by following one of the procedures below by the date on the front (see "WHEN"). If you do not, you may lose your license to drive, and your money penalties may increase." The form provides options depending on whether the recipient will or will not contest the violation.[2]

On March 27, 2013, a failure to appear warning letter was sent to Deligiannis and the matter was referred to collections. In June 2013, the court imposed a $300 civil assessment pursuant to Penal Code section 1214.1. The court also imposed a $15 fee pursuant to section 40508.5 for violating his written promise to appear and a $10 fee pursuant to section 40508.6, subdivision (b), an administrative hold processing fee. The court sent Deligiannis notice of the civil assessment. The court sent a failure to appear hold form DD5 to the DMV.

---

[1] All further statutory references are to the Vehicle Code, unless otherwise indicated.

[2] The reverse side of the form TR-115 in the clerk's transcript does not appear to be from Deligiannis's notice as it does not include any of the contact information or bail amount and includes other language and "shaded" areas suggesting this is an example designed for local agency use.

2

In correspondence dated July 23, 2013, the DMV notified Deligiannis his driving privilege was suspended effective August 22, 2013, pursuant to section 13365 because he violated his written promise to appear and failed to pay a fine (§ 42003, subd. (a)). The letter stated the suspension would remain in effect until all failures to appear (FTA) and failures to pay a fine (FTP) had been removed from his record.[3] The letter referenced an enclosed letter.

In separate two-page correspondence dated the same day, the DMV notified Deligiannis of an outstanding ticket for violating sections 21453, subdivision (a) (failure to stop at a red light), and 40509.5 (failure to appear or to pay a fine). It stated he failed to appear and owed a fine of $825. The letter explained Deligiannis could contact the court to clear his record, or pay through the DMV.

On August 2, 2013, Deligiannis sent correspondence to the DMV requesting an administrative hearing to correct the DMV's administrative and clerical errors. He denied signing a written promise to appear or receiving a notice to appear. He claimed he only received the letter notifying him his driver's license was suspended.[4] Deligiannis asserted he did not fail to pay pursuant to section 42003, subdivision (a), because there was no judgment of conviction. He asserted the DMV could not suspend his license without notice and a hearing because a driver's license is an interest protected by due process rights. He also requested a stay of the license suspension pending the hearing and decision.

---

[3]    Deligiannis requests this court take judicial notice of a DMV fast facts form defining specified terms, specifically FTA and FTP. He references an exhibit to his request, "Exhibit A," but he did not attach an exhibit. We deny his request for judicial notice, but as these terms are defined in other DMV documents elsewhere in the record, we will use them as they are commonly accepted abbreviations.

[4]    Deligiannis's return address on his August 2, 2013, letter was the same address as the one listed on notice of traffic violation.

On August 24, 2013, the DMV sent Deligiannis a record request response notifying him that pursuant to the July 23, 2013, order, "the court" suspended his driving privileges effective August 22, 2013, for violating sections 21453, subdivision (a) (failure to stop at a red light), and 40509.5 (failure to appear or to pay a fine), which the court placed in failure to appear status.

In October 2013, Deligiannis filed a petition for writ of mandate to set aside his driver's license suspension pursuant to Code of Civil Procedure section 1085. First, Deligiannis argued he did not violate a written promise to appear and did not fail to pay a fine. Second, he contended section 13365 was unconstitutional because it authorized the DMV to suspend a driver's license without affording the licensee an administrative hearing. The DMV filed a respondent's brief and lodged an administrative record.

At a hearing on June 19, 2014, the trial court detailed the procedural history of the case and identified the legal issues. The court admonished the deputy attorney general that the respondent's brief "couldn't be less helpful" because it was not a legal brief but instead an answer to the petition. The court continued the matter to allow the DMV to file a brief addressing the legal issues.

The following week, the DMV filed a supplemental brief. The DMV argued that pursuant to section 13365 it had a mandatory duty to suspend Deligiannis's driver's license based on the traffic court's notice made pursuant to section 40509.5; the DMV explained the electronic record cannot display punctuation marks and thus section 40509.5 is displayed 405095. The DMV also asserted Deligiannis was not entitled to an administrative hearing and Deligiannis could not collaterally attack a state court conviction in a mandate proceeding against the DMV.

At a hearing the following week, Deligiannis argued the notice of a traffic violation did not contain his signature and thus he did not promise to appear. The court stated the only issue before it was whether due process required the DMV to afford him an administrative hearing before suspending his license. The court added that whether he

4

violated section 40508 was an issue for the traffic court. The court concluded it would rule by minute order. In a minute order, the court denied Deligiannis's petition for writ of mandate. The following month the court entered judgment for the DMV.

Deligiannis filed a motion for new trial. Deligiannis argued the trial court's frequent interruptions of him during the hearing demonstrated it was biased against him. He also asserted the court's decision was against the law because it did not decide the traffic matter and did not provide reasons for its decision. The DMV filed an opposition. The DMV argued that pursuant to section 13365 it had a mandatory duty to suspend Deligiannis's driver's license "based on the traffic court's notice . . . he had violated . . . section 40508[]" that "was provided to the DMV by the [c]ourt pursuant to . . . section 40509.5." (Fn. omitted.) The DMV added the new trial motion was procedurally defective, had no affidavit, and was substantively meritless, and the DMV's suspension was a mandatory act. Deligiannis filed a reply. There was a hearing on Deligiannis's new trial motion. In a minute order, the trial court denied the new trial motion.

DISCUSSION

"A writ of mandate may be issued to a public agency 'to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled . . . .' [Citation.] Traditional mandamus lies 'to correct abuses of discretion, and will lie to force a particular action by the [agency] when the law clearly establishes the petitioner's right to such action.' [Citation.] [¶] Courts exercise limited review in ordinary mandamus proceedings. They may not reweigh the evidence or substitute their judgment for that of the agency. They uphold an agency action unless it is arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. [Citations.] However, courts must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute. [Citation.] Because trial and appellate courts perform the same function in mandamus actions, an appellate court

5

reviews the agency's action de novo. [Citation.]" (*Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 195.)

I. *Vehicle Code*

Section 13365 provides as follows: "(a) Upon receipt of notification of a violation of subdivision (a) or (b) of [s]ection 40508, the department *shall* take the following action: [¶] . . . [¶] (2) If the notice is given pursuant to subdivision (a) or (b) of [s]ection 40509.5, and if the driving privilege of the person who is the subject of the notice is not currently suspended under this section, the department *shall* suspend the driving privilege of the person." (Italics added.) "'Shall'" is mandatory. (§ 15.)

Section 40508, subdivision (a), states the following: "A person willfully violating his or her written promise to appear . . . is guilty of a misdemeanor regardless of the disposition of the charge upon which he or she was originally arrested." Section 40508, subdivision (b), provides the following: "A person willfully failing to pay . . . a lawfully imposed fine for a violation of a provision of this code . . . within the time authorized by the court and without lawful excuse having been presented to the court on or before the date the bail or fine is due is guilty of a misdemeanor regardless of the full payment of the bail or fine after that time."

Section 40509.5, subdivision (a), states the following: "Except as required under subdivision (c), if, with respect to an offense described in subdivision (e), a person has violated his or her written promise to appear . . . , the magistrate or clerk of the court may give notice of the failure to appear to the department for a violation of this code . . . ." Section 40509.5, subdivision (b), provides the following: "If, with respect to an offense described in subdivision (e), a person has willfully failed to pay a lawfully imposed fine . . . within the time authorized by the court or to pay a fine pursuant to subdivision (a) of [s]ection 42003, the magistrate or clerk of the court may give notice of the fact to the department for a violation . . . ." Section 40509.5, subdivision (e), includes any felony or misdemeanor offense.

6

Here, superior court records show the following: an automated traffic citation charging Deligiannis with violating section 21453, subdivision (a), on August 13, 2012, was filed on February 8, 2013; the court sent Deligiannis a failure to appear warning on March 27, 2013; the court imposed assessments and fees on June 15, 2013, and the court notified Deligiannis of the assessment on June 17, 2013. Subsequently, pursuant to section 40509.5 the superior court notified the DMV that Deligiannis failed to appear and failed to pay an $825 fine. The DMV sent Deligiannis an order of suspension because he failed to appear and/or failed to pay a fine (Evid. Code, § 664 [presumed official duty regularly performed]). Thus, because Deligiannis's failure to pay a fine was a misdemeanor pursuant to section 40508, subdivision (b), and the superior court notified the DMV of the failure to pay the fine pursuant to section 40509.5, the DMV was required to suspend Deligiannis's driver's license pursuant to section 13365, subdivision (a)(2).[5] In other words, the DMV's suspension of Deligiannis's driver's license was a mandatory act when it received notification from the superior court. *Thomas v. Department of Motor Vehicles* (1970) 3 Cal.3d 335, 337 (*Thomas*), is instructive.

---

[5]      Section 40509, subdivision (a), states as follows: "Except as required under subdivision (c) of [s]ection 40509.5, if any person has violated a written promise to appear . . . or violated an order to appear in court, including, but not limited to, a written notice to appear issued in accordance with [s]ection 40518, the magistrate or clerk of the court may give notice of the failure to appear to the department for any violation of this code . . . ." Section 40509, subdivision (b), provides as follows: "If any person has willfully failed to pay a lawfully imposed fine within the time authorized by the court . . . the magistrate or clerk of the court may give notice of the fact to the department for any violation . . . ." Section 40518 governs violations recorded by the automatic traffic enforcement system.

The superior court gave the DMV notice of both Deligiannis's failure to appear and failure to pay a fine. However, only the failure to pay a fine pursuant to section 40509.5, subdivision (b), demonstrates facts for a violation of section 40508, subdivision (b), thereby triggering the DMV's mandatory duty to suspend.

Section 40509.5, subdivision (a), does not notify the DMV of facts for a violation of section 40508, subdivision (a), because the failure to appear was not pursuant to a written promise to appear but pursuant to section 40518 involving violations recorded by the automatic traffic enforcement system.

7

In *Thomas, supra,* 3 Cal.3d at page 337, the California Supreme Court addressed the proper procedure for challenging the validity of a conviction the DMV relied on to suspend petitioner's driver's license. Petitioner was convicted in 1966, without representation by counsel, of driving under the influence, and in 1968 he was convicted of the same offense, with the assistance of counsel. (*Id.* at p. 337.) Relying on its earlier decision, the court stated petitioner could have attacked the validity of the 1966 conviction in the course of the proceedings arising in 1968, because the 1966 conviction served as a basis for increasing the penal sanctions imposed against him in the 1968 proceedings. (*Id.* at pp. 337-338.) The *Thomas* court added, however, the DMV's act of suspending petitioner's driver's license pursuant to section 13352 was merely an "administrative act in performing a mandatory function" and the DMV, having received abstracts of judgments for petitioner's two prior convictions of driving under the influence, was required to suspend his driving privilege without having a duty to decide the validity of the prior convictions. (*Thomas, supra,* 3 Cal.3d at p. 338.) The *Thomas* court concluded that when the DMV suspends a driver's license upon the driver's conviction of driving under the influence of alcohol, and the driver seeks to challenge the license suspension upon the ground the conviction was constitutionally infirm, the driver may not raise such a claim in the first instance by seeking a writ of mandate against the DMV, but first must successfully challenge the validity of the conviction in the court in which it was rendered or in a mandate proceeding directed at the rendering court. (*Id.* at pp. 338-339; *Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380 (*Pollack*) [driver who contests validity of prior conviction entitled to challenge conviction in rendering court system]; see *Larsen v. Department of Motor Vehicles* (1995) 12 Cal.4th 278, 278 [reaffirming *Thomas* for out-of-state convictions].)

8

Deligiannis asserts he did not suffer a judgment of conviction and thus there can be no fine. Based on *Thomas*, Deligiannis should have either challenged the validity of the conviction in traffic court or in a mandate proceeding directed at the traffic court. His mandate action against the DMV in the first instance was improper.

*B. Due Process*

Section 14101 provides in relevant part, "A person is not entitled to a hearing . . . [¶] (a) If the action by the department is made mandatory by this code." (*Pollack, supra,* 38 Cal.3d at p. 381 [rejecting due process claim where Legislature intended license revocation to follow administratively from record of convictions].) In *People v. Bailey* (1982) 133 Cal.App.3d Supp. 12, 14 (*Bailey*), the court addressed the issue of whether the DMV was required to provide a driver with a hearing when suspending the driver's license for a FTA. The *Bailey* court held, "[i]t would be a legal absurdity to require the [DMV] to grant a hearing on the question of whether a person did in fact violate his written promise to appear on a traffic citation, when the court where appearance was required has already made such a finding. (See . . . § 40509, subd. (a).) If the defaulting citee has a valid excuse for his nonappearance, the place to submit his explanation is in the court, not before the [DMV]." (*Bailey, supra,* 133 Cal.App.3d Supp. at p. 15, fn. omitted.) Pursuant to *Bailey*, if Deligiannis believed his fine was unlawful, or his nonappearance excused, the proper place to make his case was in traffic court.

Still, due process may require a hearing even when the applicable statute does not. Even under section 14101 a driver whose license is suspended pursuant to a statute making suspension mandatory is entitled to "a prompt hearing before a representative of the DMV if he believes his suspension is based on inaccurate DMV records." (*Pollack, supra,* 38 Cal.3d at p. 380, fn. omitted.)

9

In determining what process is due, the court balances "three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the financial and administrative burdens which would be entailed by additional safeguards. [Citations.]" (*Peretto v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 460.) The driving privilege is fundamental. (*Cinquegrani v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 741, 750.)

The risk of an erroneous deprivation without an administrative hearing is minimal when the license has been suspended in conformance with section 13365, and there is no showing the DMV's records were inaccurate. Deligiannis's petition was not supported by sufficient admissible evidence establishing the fine was arbitrary or capricious or that paperwork reflecting his fine was sent to the DMV in error.

Deligiannis argues the superior court did not report he owes a fine and his DMV record does not reflect he owes a fine. We disagree. In its July 23, 2013, letter, the DMV notified Deligiannis he owed a fine in the amount of $825. As to his DMV records, they are lengthy and admittedly difficult to decipher. It is true that just above the entry for the violation at issue here it states, "FTP: NONE*." However, just above that entry, it states, "UPDATED: 01-09-13," before the deadline for him to appear. More importantly, below the information regarding the violation at issue here it states, "FINE AMOUNT DUE $825." Therefore, based on Deligiannis's DMV records and the DMV's July 23, 2013, letter the record supports the conclusion Deligiannis owed a $825 fine.

Deligiannis also claims the superior court did not notify the DMV that he violated section 40508. We disagree. The superior court notified the DMV that Deligiannis violated section 40509.5. As we explain above, section 40509.5 authorizes the superior court to give notice to the DMV of failures to appear (subd. (a)), and failure to pay a fine (subd. (b)). Through this notice, the superior court notifies the DMV a

10

person unlawfully failed to appear (§ 40508, subd. (a)), or unlawfully failed to pay a fine (§ 40508, subd. (b)). Therefore, in effect the superior court notified the DMV that Deligiannis unlawfully failed to pay a fine and thus violated section 40508. That Deligiannis's DMV record shows other violations of section 40508 does not establish the superior court erred by giving improper notice.

Requiring administrative hearings on all suspensions made pursuant to section 13365 would entail undue financial and administrative burdens. On the other hand, in the rare case when it appears the DMV's paperwork is inaccurate or there is an issue of mistaken identity providing administrative hearings in these limited situations does not impose any significant administrative burden or cost on the state.

Deligiannis relies on *City of Redmond v. Moore* (Wash. 2004) 91 P.3d 875, 878, 882 (*City of Redmond*), which found similar Washington statutes facially unconstitutional, and a foundation report to argue the DMV denied him due process. California courts are not bound by out-of-state authorities (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 571), and Deligiannis's reliance on another state court's interpretation of its statutes does not carry the day. Deligiannis has not met his "heavy burden" of establishing section 13365 is facially unconstitutional. (*U.S. v. Salerno* (1987) 481 U.S. 739, 745 ["heavy burden" to demonstrate statute facially unconstitutional].) With respect to the foundation report, which details the impact of driver's license suspensions, it too is unpersuasive. Deligiannis's remedy was to challenge his violation in traffic court or in a mandate proceeding against the traffic court, not to proceed against the DMV. Because Deligiannis did not allege any facts which, if true, would mean the DMV was not required to suspend his license, due process did not require the DMV to provide him an administrative hearing prior to suspending his license.

11

DISPOSITION

The judgment is affirmed.  The DMV shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.